UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FRANCIS (FRANK) SULLIVAN,

    Plaintiff,

v.                            CIVIL NO. 2:15cv225

PERDUE FARMS, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion"), ECF No. 4, and accompanying Memorandum in Support, ECF No. 5, both filed by Perdue Farms, Inc. (the "Defendant") on July 31, 2015. Frank Sullivan (the "Plaintiff") filed his Response to the Motion on August 11, 2015, ECF No. 6, and the Defendant filed a Reply on August 17, 2015, ECF No. 7. The matter has been fully briefed and is ripe for review. For the reasons that follow, the Defendant's Motion is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL AND PROCEDURAL HISTORY

This action arises from the Plaintiff's claims of employment discrimination. The Plaintiff began working for Perdue in 2006. Compl. ¶ 12, ECF No. 1. He accepted a promotion

with lower pay in 2007 under the term that overtime compensation would equal his original salary. Id. ¶¶ 14-17. In January 2013, at the age of sixty-four, the Plaintiff was diagnosed with prostate cancer and had to spend six weeks at home recovering from treatment. Id. ¶¶ 18-19. When he returned to work, he was able to perform all essential functions of his job without accommodations, but the Plaintiff's shift supervisor, Thomas Burke, still informed him that he would be reporting "any problems" with the Plaintiff's work. Id. ¶¶ 23-24, 26.

In March or April 2013, Carl Barnes, a supervisor at Perdue, directed another supervisor, Larry Moen, to fabricate poor performance reports for the Plaintiff's employment record. Id. ¶ 32. Moen refused to create the false reports because he believed that the Plaintiff was "one of the best employees at Perdue Farms." Id. ¶ 33. In April 2013, Barnes moved the Plaintiff's office to a less suitable location, which required him to walk farther, and through a refrigerated area, to reach the machines he supervised. Id. ¶¶ 34-37. Barnes also suspended the Plaintiff for failing to submit invoices, although managers at Perdue had told the Plaintiff not to submit the invoices. Id. ¶¶ 38-39. The Plaintiff had not previously been disciplined for poor work performance. Id. ¶ 27. After a peer-group overturned his suspension, the Plaintiff's weekly schedule was reduced from 50 hours to 40 hours due to claims of "budget

considerations." Id. ¶¶ 40-45. However, his workload increased. Id. ¶ 49. In May 2013, the Plaintiff resigned because he believed his working conditions had become intolerable. Id. ¶¶ 60, 82.

On August 30, 2013, the Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC").[1] Id. ¶ 9. In the charge, the Plaintiff stated that he "became medically impaired" and informed the Defendant of his impairment, but he was still "able to perform the essential functions of [his] position." Compl. Ex. B, at 2. The Plaintiff further alleged that he was suspended, his shift supervisor was told to report problems regarding his work, and his office was moved. Id. He also checked boxes for discrimination based on both age and disability. Id. The earliest date of discrimination was listed as March 1, 2013, and the latest date was April 10, 2013. Id. The box for "continuing action" was not checked. Id. His charge

---

[1] The court notes that the Complaint, Brief in Opposition, and charge document allege different dates of filing and perfecting the charge. The court accepts the dates stated in the Complaint as true and views them in the light most favorable to the Plaintiff, but notes that the different dates of filing could eventually affect the court's analysis of the case. Nevertheless, as the parties failed to raise the issue, the court does not resolve the discrepancy at this juncture.

3

was perfected on April 12, 2014, and on March 3, 2015, the EEOC issued a Notice of Right to Sue letter.[2] Compl. ¶¶ 9, 10.

The Plaintiff timely filed his Complaint on June 1, 2015. Count I of the Complaint alleges discrimination under the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act (the "ADA"), and Count II alleges discrimination under the Age Discrimination in Employment Act (the "ADEA"). Compl. ¶ 1. Thereafter, on July 31, 2015, the Defendant filed the instant motion to which the Plaintiff responded on August 11, 2015. The Defendant then replied on August 17, 2015.

## II. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction Under Federal Rule of Civil Procedure 12(b)(1)

On a motion to dismiss pursuant to Rule 12(b)(1), "[t]he burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 348 (4th Cir. 2009) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

---

[2] In his Opposition Brief, the Plaintiff attached an Intake Questionnaire that he filled out on October 30, 2013, as part of preparing his EEOC charge. Pl.'s Br. Opp'n Ex. A. In this Questionnaire, he checked only the box for age-related discrimination. Id. at 3. He then alleged that (1) his supervisor was directed to report any problems with his work; (2) his office was moved and he was suspended; (3) he underwent surgery for prostate cancer at the age of 64.5 years, and when he returned, his job description had changed; and (4) a peer group later overturned his suspension. Id.

4

The plaintiff meets that burden by proving subject matter jurisdiction exists by a preponderance of the evidence. Id. at 347-48. A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1), by contending — as the Defendant does here — "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Adams, 697 F.2d at 1219). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Id.

In the instant case, the Defendant asserts that the Plaintiff failed to exhaust his administrative remedies by including claims in his Complaint that fall outside the scope of the EEOC charge. As such, the Defendant argues that the Complaint, when viewed with the attached EEOC charge, does not contain facts sufficient for the court to exercise subject matter jurisdiction.

### B. Failure to State a Claim Upon Which Relief Can Be Granted Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint; it

5

does not resolve contests regarding the facts of the case, the merits of a claim, or the applicability of any defense. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

The Supreme Court, in Twombly and Iqbal, offered guidance to courts evaluating a motion to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. That is, the court accepts facts alleged in the complaint as true and views those facts in the light most

favorable to the plaintiff. E.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). After so doing, the court should not grant the defendant's Motion, if the plaintiff "demonstrate[s] more than 'a sheer possibility'" that the defendant has violated his rights, by "articulat[ing] facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 677-78).

### III. ANALYSIS

#### A. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

As "subject-matter jurisdiction is a necessary prerequisite to any merits decision by a federal court," the court must first address the Defendant's argument under Rule 12(b)(1). Constantine v. Rectors & Visitors of Geo. Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89-101 (1998)). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co., 523 U.S. at 94 (quoting Ex parte McCardle, 7 Wall. 506, 514 (1868)). "Thus, a federal court necessarily acts ultra vires when it considers the merits of a case over which it lacks subject-matter jurisdiction."

Constantine, 411 F.3d at 480 (citing Steel Co., 523 U.S. at 101).

In order for a federal court to have subject matter jurisdiction in an employment discrimination case, the employee must exhaust administrative remedies before filing suit. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013). Failure to properly exhaust these remedies "deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Thus, as a prerequisite to bringing suit, a plaintiff must file a timely charge with the EEOC. Id.

By filing a charge, the employee gives the employer notice and an opportunity for voluntary resolution of the claim. Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) ("Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation."); Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) ("The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." (citing EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1186 (4th Cir. 1981))). Accordingly, "[t]he filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." Chacko, 429 F.3d at 510. Exhausting administrative

8

remedies is a vital part of remedying claims of employment discrimination. Balas, 711 F.3d at 407.

Once a plaintiff files an administrative charge, that charge "plays a substantial role in focusing the formal litigation it precedes." Chacko, 429 F.3d at 509; see also Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint [of discrimination in the charge], and those developed by reasonable investigation of the original complaint [of discrimination in the charge] may be maintained in a subsequent . . . lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (citing King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976)).

As such, a charge may limit the scope of litigation, and allegations that fall outside the scope of the EEOC charge will be barred. See Evans, 80 F.3d at 962-63. When determining the nature of the claims included in the charge, a court "may look only to the charge filed with [the EEOC]." Balas, 711 F.3d at 408-09 (holding that "claims based on allegations included only in Balas's intake questionnaire and letters are therefore outside the jurisdiction of the federal courts"). Accordingly, if the claims in the Complaint exceed the scope of the charge,

the plaintiff has failed to exhaust his administrative remedies, and the court lacks jurisdiction to hear the claims. Jones, 551 F.3d at 300.

In the instant case, the Plaintiff alleges discrimination under the ADA and the ADEA. In his Complaint, he asserts that he was discriminated against under the ADA because he (1) was constructively discharged and (2) was denied reasonable accommodations. He next claims that he was discriminated against under the ADEA when he (1) was constructively discharged, (2) was disciplined and suspended, and (3) experienced a reduction in hours. The court will address each of these claims in turn.

### 1. Count I – The Plaintiff's Americans with Disabilities Act Claim

The Plaintiff's first claim under the ADA alleges that he suffered an adverse employment action when he was constructively discharged in May 2013 after being diagnosed with prostate cancer earlier in the year. Compl. ¶¶ 18, 59-60, 82. In his Complaint, the Plaintiff argues that the terms and conditions of his employment changed, making conditions intolerable, and thus forcing him to resign. Id. ¶¶ 60, 68. The Defendant contends, however, that the court lacks subject matter jurisdiction over this claim because the Plaintiff failed to exhaust his administrative remedies by not including the claim of constructive discharge in his EEOC charge. Mem. Supp. at 9-10.

To support his claim of discrimination under the ADA, the Plaintiff argues that the information in his Intake Questionnaire should be included in the contents of the charge,[3] but the Fourth Circuit has ruled against allowing questionnaires or letters to be used when determining the scope of the charge. Balas, 711 F.3d at 408-09. However, even if the court accepted the Plaintiff's argument and included the information in his Intake Questionnaire, he nevertheless failed to check the box indicating a disability. Pl.'s Br. Opp'n Ex. A, at 3. He also did not discuss either of his ADA claims — constructive discharge and failure to provide reasonable accommodations — and he stated that the latest date of discrimination occurred in April 2013. Id. at 1, 3. Accordingly, the facts contained in the Intake Questionnaire would not change the court's analysis.

As such, the court must now review only the facts in the EEOC charge to determine if the Plaintiff exhausted his administrative remedies. First, the court must decide if the claim of constructive discharge was stated in the charge. See Evans, 80 F.3d at 963. While the Plaintiff did briefly mention the suspension and his office relocation in the charge, he failed to raise the issue of his constructive discharge at that time. Compl. Ex. B, at 2.

---

[3] See supra note 2.

11

Although the Plaintiff did not discuss the constructive discharge in his charge, the court may still have jurisdiction, if the constructive discharge claim is reasonably related to the claims laid out in the charge or is likely to be developed by reasonable investigation into the charge. See Evans, 80 F.3d at 963. In his Complaint, the Plaintiff states that the constructive discharge occurred in May 2013,[4] more than a month after April 10, 2013, the date the charge lists as the latest date of discrimination. The Plaintiff also did not check the box for continuing action when he filled out the charge. Thus, the constructive discharge can be seen as a distinct event, separate from the suspension and his office relocation, both of which were discussed in the charge. Furthermore, although the Plaintiff's Complaint alleges intolerable conditions that led to his resignation, the Plaintiff's charge does not make that allegation. As such, the constructive discharge is not reasonably related to the contents of the charge, nor would a reasonable investigation of the claims contained in the charge lead to the discovery of the alleged constructive discharge. Accordingly, this claim falls outside the scope of the charge and is therefore procedurally barred.

---

[4] The only date related to the constructive discharge in the Complaint was May 2013. Compl. ¶ 82. The Brief in Opposition, however, gave the date of the discharge as May 31, 2013. Pl.'s Br. Opp'n 10.

12

The Plaintiff's second claim under the ADA is for failure to provide reasonable accommodations. This claim is also barred. The charge makes no mention of accommodations or attempts by the Plaintiff to contact the Defendant to discuss the issue. In fact, the Plaintiff alleged that he could "perform the essential functions of [his] position".[5] Compl. Ex. B, at 2. As such, the claim of failure to provide reasonable accommodations is not reasonably related to the limited claims in the charge, and no reasonable investigation into the charge would lead to the discovery of this claim. Because the Plaintiff failed to exhaust his administrative remedies, the court lacks jurisdiction to consider both claims in Count I of the Complaint.

### 2. Count II - The Plaintiff's Age Discrimination in Employment Act Claim

In the second count of his Complaint, the Plaintiff alleges three claims of discrimination under the ADEA. He contends that he was subjected to adverse employment actions when he (1) was constructively discharged, (2) was disciplined and ultimately suspended, and (3) experienced a reduction in hours. Compl. ¶¶ 80-82, 86-88. As with his claim of constructive discharge under the ADA in Count I, this Count II constructive discharge claim under the ADEA is barred for failure to exhaust

---

[5] The court also notes that in his Complaint, the Plaintiff states that he did not require "on-site accommodations," and he does not mention any attempt to meet with management to discuss potential accommodations. Compl. ¶ 24.

13

administrative remedies. The last date of discrimination listed on the charge is more than a month before the Plaintiff resigned, and the alleged constructive discharge is a separate event that is not reasonably related to the limited information in the charge.[6] As a result, the court lacks jurisdiction over the claim of constructive discharge under the ADEA.

The Plaintiff's second claim under the ADEA concerns his discipline and ultimate suspension. In his EEOC charge, the Plaintiff stated that he was suspended, even though he had no prior disciplinary problems. Compl. Ex. B, at 2. The Defendant argues that the reference to the suspension in the charge is only in relation to the Plaintiff's disability, not his age, because the discussion of the suspension immediately follows a mention of the Plaintiff's prostate cancer. Mem. Supp. at 10. However, the Plaintiff checked the box indicating discrimination based on age and wrote that he "believe[s] that [he] was discriminated against in discipline . . . because of [his] age (64)." Compl. Ex. B, at 2. These allegations are enough to demonstrate that the Plaintiff included his ADEA discipline and suspension claim in the charge. Consequently, the court has jurisdiction to consider this claim.

The third claim in Count II alleges discrimination based on the Plaintiff's reduction in hours. As this claim is not stated

---

[6] See supra Part III.A.1.

14

in the charge, the court must consider whether it is reasonably related to the claims in the charge or could be discovered during a reasonable investigation. The Complaint does not specify the date on which the Plaintiff's hours were reduced, but the action appears to have happened around the time of the suspension and relocation of the Plaintiff's office sometime in April 2013. Compl. ¶¶ 34-46. Thus, the events appear to be similarly situated in time. Further, the Plaintiff's supervisor, Carl Barnes, instituted all three actions. Id. Accepting the facts in the Complaint as true, an investigation into the suspension and office relocation could lead to a discovery of the reduction in hours. Because this claim is reasonably related to the counts in the charge and likely to arise from a reasonable investigation, the court has jurisdiction to consider this claim.

Accordingly, the court **GRANTS** the Defendant's Rule 12(b)(1) Motion with respect to Count I and the constructive discharge claim in Count II and **DENIES** the Defendant's Motion with respect to the claims of the discipline and suspension, and reduction in hours in Count II.

### B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

The court has dismissed Count I and the constructive discharge claim in Count II for lack of subject matter

15

jurisdiction. However, two of the Plaintiff's Count II claims remain: that he suffered adverse employment actions in violation of the ADEA when he (1) was disciplined and ultimately suspended and (2) experienced a reduction in hours. Compl. ¶¶ 80-81, 86-88. The court will now address the Defendant's Rule 12(b)(6) Motion with respect to these remaining claims.

In order to make out a prima facie case under the ADEA, the Plaintiff must show that he (1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class or someone "substantially younger." See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (setting out the test for a prima facie case under Title VII); see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-13 (1996) (applying the McDonnell Douglas test to an ADEA claim).

In this case, the Plaintiff was sixty-four years old at the time of the alleged adverse actions; thus, he satisfies the first prong of the test. Compl. ¶ 11. As to the second prong, he claims that both the suspension and the reduction in hours were adverse employment actions. Id. ¶¶ 80-81, 86-88. The Plaintiff provides multiple factual allegations in the Complaint regarding these issues. He discusses how he was suspended for failing to

16

submit invoices that management had told him not to pay, and that a peer group later overturned his suspension. Id. ¶¶ 38-41. He also alleges that his hours were reduced after he accepted a promotion under the term that he would work overtime in order to achieve a specific pay. Id. ¶¶ 44-47. Viewing this account in the light most favorable to the Plaintiff, he has provided facts sufficient to support the second prong of the McDonnell Douglas test.

The court must then consider whether the Plaintiff provided enough factual allegations to show that he was meeting his employer's expectations at the time of the adverse employment actions. Although the Defendant argues that the Plaintiff does not provide any facts to support this part of the test, the Plaintiff states in his Complaint that he had never been disciplined for poor work performance until the relevant suspension. Id. ¶ 27. He also contends that one of his supervisors refused to fabricate poor performance records because the Plaintiff was "one of the best employees at Perdue Farms." Id. ¶¶ 32-33. Accepting these facts as true, the Plaintiff plausibly alleges that he met his employer's expectations at the time of the adverse actions, and thus, he satisfies the third prong under McDonnell Douglas.

The final step is to determine whether the Plaintiff has a plausible claim that he was treated less favorably than someone

outside the protected class. In his Complaint, the Plaintiff alleges that "Supervisor Carl Barnes . . . routinely singled out and treated older employees and/or those with medical needs differently than similarly situated employees in order to have them terminated." Id. ¶ 56. The Plaintiff next contends that "Carl Barnes routinely falsified or attempted to falsify employee performance reports to cast older employees and/or those with medical needs in a negative light that would lead to the employees' termination." Id. ¶ 57. He also states that Barnes attempted to have another supervisor, Moen, fabricate false reports about the Plaintiff. Id. ¶¶ 32-33.

At the Rule 12(b)(6) stage, the Plaintiff's allegations warrant the inference that he was treated less favorably than younger employees. Once the factual record is developed through discovery, the evidence may not support this inference. However, accepting the allegations as true and giving the Plaintiff the benefit of all reasonable factual inferences, the court cannot say that the Plaintiff has failed to demonstrate more than a sheer possibility that the balance of interests tips in his favor. See, e.g., Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Accordingly, the Plaintiff has sufficiently shown, at this juncture, that he satisfies the fourth and final prong of the McDonnell Douglas test. Consequently, the Defendant's Rule

12(b)(6) Motion to Dismiss is **DENIED** with respect to the remaining Count II claims.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss is **GRANTED** with respect to Count I and the constructive discharge claim in Count II. However, the Defendant's Motion to Dismiss is **DENIED** with respect to the Plaintiff's claims of his discipline and ultimate suspension and his reduction in hours in Count II. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

September 23, 2015